In the Matter of the Application of MARY E. FITZPATRICK for an Order of Mandamus against THE NEW YORK STATE TEACHERS' RETIREMENT BOARD.

Supreme Court, Rensselaer County, October 29, 1924.

Schools — mandamus to compel payment of teachers' retirement allowance — teacher, prior to her death, elected, pursuant to Education Law, § 1109-a, to accept part of monthly retirement allowance for herself and designated that balance of total be paid petitioner — teacher died during pendency of claim before state retirement board and before its physician had made physical examination — teacher eligible to retirement under Education Law, § 1109-a — rule of state retirement board requiring filing of applications for retirement at least thirty days before final action is arbitrary, unwarranted by law, and repugnant to spirit of statute — delay in considering application unnecessary and oppressive — claim properly presented to board — petitioner entitled to full retirement allowance.

A rule of the New York state teachers' retirement board enacted pursuant to section 1103 of the State Education Law, which requires that applications for retirement in disability claims must be filed thirty days before final action is taken on the application, is arbitrary, unwarranted by the statute, and repugnant

to the spirit of the provision of the Education Law governing the teachers' retirement system.

Accordingly, the petitioner's application for a mandamus order to compel the payment of a teacher's full retirement allowance should be granted, where it appears that the teacher, who retired for disability as the result of an incurable disease, elected pursuant to section 1109-a of the Education Law to accept a lesser sum than the fixed allowance, and designated the petitioner, her sister, as the beneficiary of the balance of the residue of her total allowance; that though the retirement board met on the next day after she had filed her application, it did not pass upon her case until more than three months thereafter by reason of a rule which forbade it to act in less than thirty days after a disability application is filed; that the required medical examination was unnecessarily delayed; and that the teacher, whose claim was proper when she presented it to the board, died within seventeen days after the filing of her application, since the delay in considering the case, occasioned by the rule, was unnecessary, unreasonable, oppressive and calculated to work an irreparable wrong.

MOTION for an order of mandamus.

*Gerald W. O'Connor*, for the petitioner.

*Frank B. Gilbert*, for the retirement board.

HOWARD, J. The petitioner has undertaken to get relief through mandamus. That may not be the proper remedy, but I shall spend no time with that question for the learned counsel for the board has generously waived it aside in his brief. He says the board is not so much concerned with the remedy as with the law. Neither shall I consume any time over the amount demanded. In a letter to the deceased teacher, written after her application for retirement had been filed, the board informed her that her total " retirement allowance " was approximately $7,463.39. That is the amount now claimed. If it is slightly erronous I assume that counsel for the board, with the same broad view of the subject, will stipulate as to the correct figure. Brushing aside, then, all questions of practice and all quibbles of every character let us examine the essence of the controversy.

Section 1109-a of the Education Law provides, in substance, that a teacher belonging to the retirement system who has taught a certain number of years and becomes physically or mentally disabled may be retired from active service. The teacher so retired is entitled to a certain fixed sum of money as " allowance," it is called, payable monthly as long as she lives. But she may elect to take a lesser sum with the right to have the balance of her total retirement allowance paid to any relative or person she may name. In the case before us the deceased teacher in her application indicated that she desired to accept the lesser amount monthly for herself and have the residue of her total allowance, if any, paid to her sister after her death. Education Law, § 1109-c.

Before a teacher can be retired for disability under this section she must submit to a medical examination by a physician designated by the board. Upon the report of the physician the board shall determine whether the teacher is, in fact, incapacitated. If it concludes that she is incapacitated she is entitled to be retired.

Elizabeth V. Fitzpatrick, the teacher in this case, made application on the 8th day of January, 1924, to be retired. She filed with her application the affidavit of a physician showing that she was incurably ill. The board met the next day, January ninth, but did not act upon her petition further than to designate a physician to examine her. The physician did nothing until January twenty-third. Then he wrote and asked the teacher to come to Albany to be examined. The next day, January twenty-fourth, the physician wrote her another letter saying that " during the next week " he would be pleased to go up to Troy to examine her. She died on the day the last letter was received.

Under the unequivocal language of section 1109-a of the Education Law her case was complete. She was a member of the teachers' retirement system, she had taught the requisite number of years, she was physically disabled. That was enough. That entitled her to be retired. There was nothing more for her to do. It remained for the board to act. If the board had acted immediately upon her application she would have been retired and her sister would now be clearly entitled to the total retirement allowance, whatever that may be. But the board delayed, and while it delayed the teacher languished and died.

The statute gives the board no specific right to defer its action on an application for disability retirement. It gives the physician no right to procrastinate his examination of the sick teacher. Section 1103, as added by Laws of 1920, chapter 503, does, however, provide as follows: " The retirement board shall from time to time establish rules and regulations for the administration and transaction of its business and for the control of the funds created herein."

Under this provision of the statute, and long previous to the application herein, the board had adopted certain by-laws and rules, one of which reads as follows: "Applications for retirement shall be filed with the secretary at least thirty days before final action on the same."

This rule, in effect, forbade the board to act in less than thirty days after a disability application had been filed. As counsel for the board expresses it in his brief, " the only question to be considered is as to the validity of the rule." That is true. The validity of the rule is the only issue here. Let us see, then, how the rule worked in this case and whether it contravenes the law or harmonizes with the purpose of the legislature.

The teacher in the case before us filed her application on January eighth. The board met the next day. Instead of taking up the claim immediately it deferred action until its next meeting on April twenty-fifth, more than three and one-half months distant. This delay was wholly unnecessary unless the rule forced it upon the board. The teacher lived only six miles from Albany where the board met. The board argues, however, that it cannot retire a teacher except upon a report of a physician. This is correct. But the matter of a physical examination and report was simple. It could have been accomplished in two hours. Miss Fitzpatrick's ailment was not of a dubious character. The mere glance of a trained physician would have told the story — told that Elizabeth V. Fitzpatrick could never work again. Indeed, the board does not question it. The board comes into court not to dispute the gravity of her malady but to assert that even if she were incurably ill she could not, under the rule, be retired. Unless this rule precluded it from acting, it was the duty of the board, under the circumstances of this case, to require the physician to proceed expeditiously. The law does not require the board to intrust all this work to one physician. If necessary, local physicians should be designated to make examinations in particular cases, and surely if one physician is to do it all he should not be permitted to travel about the state for weeks on other work while a sick school teacher races with death. But, under the rule, as counsel contends, even if the physical examination had been made the board could not have acted at its meeting on January ninth. The rule may have been thus rigid in form. It was in fact rigid and arbitrary, but in carrying out the humane design of this beneficent law, no rule should have been employed by the board, even if the statute seemed to permit it, so inflexible as to work injustice and wrong.

Did the statute authorize such a rule? In trying to discover whether this rule is a lawful offspring of the statute or an illegitimate creature of the board, let us fathom, if we can, the design of the legislature. Section 1109, dealing with superannuation retirement, requires the teacher to be retired " within thirty days." That is, the board is given thirty days' latitude in which to act. It may act sooner or it may take thirty days. But in section 1109-a, providing for disability retirement, this clause is omitted and the section does not specifically permit thirty days' delay, or any delay. This is significant. Why was the law thus framed? It was not accident. There must have been a reason. Let us look into it. In superannuation cases there is no hurry. The teacher, although old, may be sound and well; whereas, in disability cases, the teacher, stricken by the sudden onslaught of disease, does not have oppor-

tunity to deliberate and plan and prepare her application thirty days in advance of a regular quarterly meeting of the board. Having this thought in mind, it would seem (for the board offers no explanation) the legislature withheld the thirty-day clause from the disability section and imposed upon the board the duty of acting expeditiously.

If this inflexible rule which the board created and imposed upon itself was valid, if the statute authorized its adoption, then the petitioner can have no relief here or in any other court. That is certain. But the rule cannot be valid unless the board had a right to adopt it, and if it was the purpose of the legislature, as pointed out above, to withhold from the board the right to delay action thirty days in disability claims, where is the authority to adopt such a rule? Surely no contention can be made that specific authority was given by the language quoted from section 1103. It is only by interpretation that such a right can be spelled out. " Rules and regulations for the administration and transaction of its business," the section says. Can these words be expanded into a right to amend the statute? Can the words be construed into a right to postpone action for three months and seventeen days, procrastinate until irreparable harm comes, until death wipes out an otherwise perfect claim? Such a rule does not " regulate the transaction of business; " it tramples upon the statute and defeats the law. The board is charged with the duty of making the law " effective," not abortive.

The board and its officers and attorney are unquestionably sincere in their anxiety to protect the retirement fund against unrighteous raids, but this anxiety has led them into an erroneous conception of their duties — led them, in this case, into hostility to an honest claim. It is the business of these officials to take the law as they find it and not assume to make it over as they think it ought to be. The counsel for the board and its secretary and actuary, thus misconceiving their obligations, have become greatly alarmed at applications of teachers who toil in broken health up to the last minute of their strength, scorning to be malingerers, and when they can no longer work ask to be retired. These officials style such applications " death bed claims." But the statute knows no death bed claims. It expresses no horror at such applications for retirement. Its language is straightforward and definite. The statute is as solicitous for those dependent upon the teacher as for the teacher herself.

The teachers have great confidence in this retirement law. It is a refuge for them in their decrepitude and decline, a protection

53

for those dependent upon them. The board should not permit its actuary to conjure up imaginary dangers which worry the teachers and shake their faith in the law. And the board should put no narrow interpretation upon the law. The school teachers of this state are entitled to a broad interpretation of this benignant statute.

The foregoing observations lead me to conclude that the rule adopted by the board requiring the teacher in disability claims to file her application thirty days in advance of a regular board meeting, is arbitrary, unwarranted by the statute and repugnant to the spirit of the law.

I also conclude that the delay of three months and seventeen days in this case was unnecessary, unreasonable, oppressive and calculated to work irreparable wrong.

I conclude further that the claim of Elizabeth V. Fitzpatrick was perfect when she presented it to the board and that she merited retirement under the law and that her sister Mary E. Fitzpatrick, the petitioner herein, is entitled to the full retirement allowance, whatever that amount may be.

The motion is granted.